Justin M. Baxter, WSBA #39182
Email: justin@baxterlaw.com
BAXTER & BAXTER, LLP
8835 SW Canyon Lane Suite 130
Portland, OR 97225
Telephone: (503) 297-9031
Facsimile: (503) 291-9172

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WASHINGTON
## AT TACOMA

| | |
|---|---|
| **NOAH DURR,** | Case No. |
| Plaintiff | **COMPLAINT** |
| vs. | (Electronic Fund Transfer Act, 15 U.S.C. § 1693 et seq., Washington Consumer Protection Act, RCW 19.86.010) |
| **BLOCK, INC. d/b/a CASH APP, and CHIME FINANCIAL, INC.,** | |
| Defendant. | JURY TRIAL DEMANDED |

## INTRODUCTION

1.      This case arises from two financial technology companies' unlawful refusal to reimburse their customer for thousands of dollars in unauthorized electronic fund transfers stolen from his accounts after his iPhone was taken while he slept.

Page 1      COMPLAINT

**Baxter & Baxter, LLP**
8835 SW Canyon Lane, Suite 130
Portland, OR 97225
(503) 297-9031 (Telephone)
(503) 291-9031 (Facsimile)

2.      Plaintiff Noah Durr ("Mr. Durr" or "Plaintiff") brings this action against Defendants Block, Inc. d/b/a Cash App ("Cash App") and Chime Financial, Inc. ("Chime") (collectively, "Defendants") for violations of the Electronic Fund Transfer Act, 15 U.S.C. §§ 1693 et seq. ("EFTA"), and its implementing regulation, Regulation E, 12 C.F.R. Part 1005, and for violations of the Washington Consumer Protection Act, RCW 19.86.010 et seq.

3.      On or about July 4, 2025, while Mr. Durr was asleep in his home in Puyallup, Washington, his iPhone 14 was stolen by Felizio Williams (also known as "Flow"), one of several individuals who had been at Mr. Durr's home that evening.

4.      Using the stolen phone, Mr. Williams unlawfully accessed Mr. Durr's Cash App account and Chime checking account and proceeded to drain them through a series of rapid, unauthorized transfers and purchases.

5.      Mr. Durr discovered the unauthorized activity the following day and promptly contacted both Cash App and Chime by telephone to report the theft and dispute every unauthorized transaction. He filed a police report with the Pierce County Sheriff's Department and, later, a supplemental police report identifying additional unauthorized charges that continued to post to his accounts.

6.      Notwithstanding this evidence, both Defendants denied all of Mr. Durr's disputes, failed to provide any provisional credit, refused to accept disputes for pending transactions, and—in Cash App's case—closed Mr. Durr's account entirely and locked him out of it.

7.      Compounding the harm, despite Mr. Durr's express instruction that Chime not generate a new virtual card number because his stolen phone gave the thief access to his accounts and applications, Chime generated and issued a new virtual card number, which the thief obtained and used to effect further unauthorized transfers.

Page 2      COMPLAINT

**Baxter & Baxter, LLP**
8835 SW Canyon Lane, Suite 130
Portland, OR 97225
(503) 297-9031 (Telephone)
(503) 291-9031 (Facsimile)

8. Under the EFTA, the burden of proof rests squarely on financial institutions to demonstrate that a challenged transfer was authorized. 15 U.S.C. § 1693g(b). Defendants cannot meet that burden here.

9. The stolen funds included money Mr. Durr had set aside for rent, and Defendants' wrongful denials and refusal to provisionally credit his account caused Mr. Durr to miss his rent payment and contributed to the subsequent loss of his home.

10. To date, Defendants have not reimbursed Mr. Durr for any portion of the $3,736.87 in unauthorized transfers. Mr. Durr respectfully seeks actual damages, statutory damages, treble damages, attorneys' fees and costs, and such other relief as this Court deems just and proper.

## JURISDICTION AND VENUE

11. This Court has subject matter jurisdiction pursuant to 15 U.S.C. § 1693m(g) and 28 U.S.C. § 1331, as this action arises under the laws of the United States.

12. Supplemental jurisdiction over any state law claims exists pursuant to 28 U.S.C. § 1367.

13. Jurisdiction over Mr. Durr's claim for declaratory relief is conferred by 28 U.S.C. § 2201.

14. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because Plaintiff resides in Pierce County, Washington, which is within the Western District of Washington; a substantial part of the events and omissions giving rise to this action occurred within this District; and Defendants regularly conduct business in this District.

\\\ \\\ \\\

Page 3    COMPLAINT

**Baxter & Baxter, LLP**
8835 SW Canyon Lane, Suite 130
Portland, OR 97225
(503) 297-9031 (Telephone)
(503) 291-9031 (Facsimile)

**PARTIES**

15.    Plaintiff Noah Durr is a natural person and citizen of the State of Washington, residing in Puyallup, Pierce County, Washington.

16.    At all times relevant to this action, Mr. Durr was a "consumer" as defined by 15 U.S.C. § 1693a(6).

17.    Defendant Block, Inc. is a corporation organized under the laws of the State of Delaware, with its principal place of business in San Francisco, California.

18.    Block, Inc. does business as Cash App and is a financial technology company that facilitates the transfer of funds, operates as an online payment processor, and provides account-linked payment cards to consumers.

19.    At all times relevant to this action, Block, Inc. d/b/a Cash App was a "financial institution" as defined by 15 U.S.C. § 1693a(9) and 12 C.F.R. § 1005.2(i), in that it holds an account belonging to a consumer and to or from which electronic fund transfers can be made.

20.    Defendant Chime Financial, Inc. is a financial technology company, not an FDIC-insured bank. Banking services and Chime's Visa® debit card are provided by The Bancorp Bank, N.A. or Stride Bank, N.A., Members FDIC, pursuant to a license from Visa U.S.A., Inc.

21.    Chime Financial, Inc. is incorporated in the State of Delaware and maintains its principal place of business at PO Box 417, San Francisco, CA 94104.

22.    At all times relevant to this action, Chime Financial, Inc. was a "financial institution" as defined by 15 U.S.C. § 1693a(9) and 12 C.F.R. § 1005.2(i).

**FACTUAL ALLEGATIONS**

Page 4     COMPLAINT

23.    Prior to July 4, 2025, Mr. Durr maintained an active account with Cash App (the "Cash App Account") and a checking account with Chime (the "Chime Account"), the latter of which was linked to a Chime Visa® debit card ending in 3467.

24.    Mr. Durr used both accounts for everyday financial transactions, including holding funds earmarked for his monthly rent payment.

25.    Mr. Durr's Chime Account was linked to his Cash App Account, enabling funds to be transferred between the two platforms.

26.    On July 4, 2025, Mr. Durr was at his home located at 18212 113th Ave E, Puyallup, Washington, with several individuals, including Felizio Williams, also known as "Flow."

27.    While Mr. Durr was asleep, Mr. Williams stole Mr. Durr's iPhone 14 and used it to access Mr. Durr's Cash App Account and Chime Account without authorization.

28.    Mr. Williams changed the Apple ID associated with the stolen iPhone, preventing Mr. Durr from locating the device through Apple's "Find My" feature. Before the Apple ID was changed, however, Mr. Durr was able to track the phone to the same general area later confirmed by the Lyft ride record described below.

29.    Using Mr. Durr's Chime Account, Mr. Williams made the following unauthorized transfers on July 4, 2025:

(a) Transfer to Jovan W. for $500.00, at approximately 4:25 AM, labeled "Pay Anyone Transfer For: Bottles"; and

(b) Transfer to Jovan W. for $500.00, at approximately 4:26 AM, labeled "Pay Anyone Transfer For: Bottle."

30.    Using Mr. Durr's Cash App Account, Mr. Williams made the following unauthorized transfers and purchases on July 4, 2025:

Page 5    COMPLAINT

Baxter & Baxter, LLP
8835 SW Canyon Lane, Suite 130
Portland, OR 97225
(503) 297-9031 (Telephone)
(503) 291-9031 (Facsimile)

(a) Cash App*Noah Durr*Add payment to $minstrelflow23 for $200.00, at approximately 3:57 AM;

(b) Cash App*Noah Durr*Add payment to $minstrelflow23 for $200.00, at approximately 4:01 AM;

(c) Apple Cash Balance Add for $251.00, at approximately 6:05 AM;

(d) Cash App*Noah Durr*Add payment to $lavisharmani223 (Armani Blu) for $450.00, at approximately 6:52 PM;

(e) Cash App*Noah Durr*Add payment to $rmzarafaii for $41.00, at approximately 7:06 PM;

(f) Lyft *Ride Fri 4 Am for $72.53, at approximately 4:16 AM; and

(g) Uber Trip* Trip for $22.34, at approximately 1:11 PM

31.    The Lyft ride charged to Mr. Durr's account at approximately 4:16 AM on July 4, 2025 was used by Mr. Williams to travel from Mr. Durr's residence at 18212 113th Ave E, Puyallup, WA 98374, to Mr. Williams's own residence at 3224 S 288th St, Auburn, WA 98001. The Lyft trip receipt, which Mr. Durr obtained, reflects the pickup and drop-off addresses and the $72.53 charge to Mr. Durr's Visa debit card ending in 3467.

32.    On July 5, 2025, Mr. Durr attempted to order an Uber and the transaction was declined. He then checked his email on his laptop and discovered evidence of the unauthorized activity, and upon reviewing his Chime Account, saw all of the unauthorized transactions.

33.    On July 5, 2025, Mr. Durr called Cash App customer support to report the theft and dispute the unauthorized transactions. Cash App informed Mr. Durr that there was "no error" and issued no provisional credit.

Page 6    COMPLAINT

Baxter & Baxter, LLP
8835 SW Canyon Lane, Suite 130
Portland, OR 97225
(503) 297-9031 (Telephone)
(503) 291-9031 (Facsimile)

34.     On July 5, 2025, Mr. Durr also called Chime to report the theft and dispute the unauthorized transactions. By email dated July 5, 2025, Chime confirmed that dispute claim number 17393851 had been filed and stated that Mr. Durr would receive a temporary credit if Chime was unable to resolve the dispute by July 18, 2025.

35.     During that July 5, 2025 call, Chime canceled Mr. Durr's Chime Visa® debit card ending in 3467.

36.     Mr. Durr specifically instructed the Chime representative not to generate or issue a new virtual card number, explaining that his iPhone had been stolen, that the thief had changed the Face ID on the phone to his own face, and that the thief therefore had full access to Mr. Durr's financial applications, including his Chime and Cash App accounts.

37.     The Chime representative affirmatively confirmed to Mr. Durr that no new card would be generated.

38.     Notwithstanding Mr. Durr's express instructions and the representative's assurance to the contrary, Chime proceeded to generate and issue a new virtual card number for Mr. Durr's Chime Account.

39.     The newly issued virtual card number was obtained by Mr. Williams, who thereafter used it to initiate additional unauthorized transfers from Mr. Durr's Chime and Cash App accounts, including by uploading the new card number to Cash App and sending further funds to himself and others.

40.     When Mr. Durr attempted on July 5, 2025 and thereafter to dispute the unauthorized transactions, Cash App and Chime representatives told him that he could not dispute transactions that were still in "pending" status and that he was required to wait until each transaction was fully processed before a dispute could be filed.

Page 7     COMPLAINT

41.    As a result of Defendants' refusal to accept disputes for pending transactions, Mr. Durr was forced to make repeated telephone calls to each Defendant over a period of days to dispute each unauthorized transaction as it processed. During that waiting period, additional unauthorized charges continued to post to his accounts.

42.    On or about July 6, 2025, approximately $1,200 was deposited into Mr. Durr's Cash App Account. Using the access he had obtained, Mr. Williams initiated additional unauthorized transfers, including:

(a) Cash App*Ahnahsti Smith for $900.00, on July 8, 2025, at approximately 3:55 AM;

(b) Cash App*Noah Durr*Add for $100.00, on July 14, 2025, at approximately 6:11 PM;

(c) Cash App*Noah Durr*Add for $200.00, on July 14, 2025, at approximately 6:11 PM;

(d) Cash App to Ash Tre ($ashhtre2) for $300.00, on July 14, 2025.

43.    By email dated July 6, 2025, Chime confirmed that a second dispute, claim number 17401842, had been filed.

44.    On July 8, 2025, Mr. Durr filed a police report with the Pierce County Sheriff's Department, Incident Number 2518909015.1, identifying Felizio Williams as the individual who stole his iPhone and made unauthorized transfers from his accounts.

45.    By email dated July 9, 2025, Cash App denied Mr. Durr's dispute for the $200.00 payment to $minstrelflow23, stating that "no error occurred because the payment was authorized using a Security Lock feature."

46.    By email dated July 9, 2025, Chime confirmed that dispute claim number 17428330 had been filed.

47.    By email dated July 12, 2025, Chime notified Mr. Durr that it had denied one or more of his disputes.

Page 8    COMPLAINT

**Baxter & Baxter, LLP**
8835 SW Canyon Lane, Suite 130
Portland, OR 97225
(503) 297-9031 (Telephone)
(503) 291-9031 (Facsimile)

48.     By email dated July 14, 2025, Chime notified Mr. Durr that it had denied additional disputes.

49.     In response to Mr. Durr's disputes, Chime sent Mr. Durr emails with hyperlinks through which Mr. Durr could upload supporting documentation in connection with his disputes.

50.     Mr. Durr used those email links to upload his police report and related documentation to Chime. Chime confirmed receipt by email dated July 15, 2025.

51.     By email dated July 15, 2025, Chime confirmed that dispute claim number 17487536 had been filed.

52.     On July 16, 2025, Cash App sent Mr. Durr an email stating that his Cash App account was being closed because he "didn't verify [his] identity after [his] dispute was flagged as potentially fraudulent or false."

53.     The same email stated that his dispute claim for $41.00 to $rmzarafaii had been denied, and cited as its reasons "account history, transaction disputes, or other possible violations of the Cash Terms of Service." Cash App stated that it could "not provide further details" and was "unable to change this decision."

54.     As a result of that account closure, Mr. Durr was locked out of his Cash App account entirely, and to this day has been unable to access his old Cash App account.

55.     On July 22, 2025, Mr. Durr filed a supplemental police report, Incident Number 2518909015.2, to document additional unauthorized transactions that continued to post after his initial report.

56.     Mr. Durr provided both Defendants with his police reports and related supporting documentation, including by uploading the initial and supplemental police reports to Chime through the email document-upload links Chime had sent him.

Page 9     COMPLAINT

**Baxter & Baxter, LLP**
8835 SW Canyon Lane, Suite 130
Portland, OR 97225
(503) 297-9031 (Telephone)
(503) 291-9031 (Facsimile)

57.     By email dated July 23, 2025, Cash App denied Mr. Durr's remaining dispute claim (Case No. 189917153), stating that "this transaction(s) was authorized by you or someone you authorized to use your credentials, and no error occurred."

58.     The July 23, 2025 denial email included a link that Cash App stated could be used to request documents it had relied on in making its determination; however, that link required the Cash App mobile application—the application from which Cash App had already locked Mr. Durr out when it closed his account on July 16, 2025.

59.     Chime ultimately denied each of Mr. Durr's four disputes (claim numbers 17393851, 17401842, 17428330, and 17487536) without explaining the grounds for its determinations and without providing any provisional credit.

60.     The total amount of unauthorized transactions was $3,736.87 (the "Stolen Funds").

61.     Mr. Durr did not authorize any of these transactions, and he received no benefit from any of them.

62.     To date, neither Cash App nor Chime has reimbursed Mr. Durr for any portion of the Stolen Funds.

63.     Chime's own July 5, 2025 dispute confirmation email acknowledged that Chime's investigation could take until October 3, 2025—a period of approximately ninety (90) days—yet Chime never provisionally credited Mr. Durr's account during that period.

64.     Cash App likewise failed at any time to provisionally credit Mr. Durr's account for the amounts in dispute.

65.     The Stolen Funds included money Mr. Durr had set aside to pay his monthly rent.

66.     As a direct result of Defendants' wrongful denial of Mr. Durr's disputes and their refusal to provisionally credit his account, Mr. Durr was unable to pay his rent when it came due.

Page 10     COMPLAINT

67.    Mr. Durr was ultimately evicted from his home as a consequence of the financial devastation caused by the Stolen Funds and Defendants' unlawful conduct.

68.    Defendants' conduct caused Mr. Durr severe emotional distress, including shock, anger, stress, and depression. He experienced significant anxiety about his financial situation, his inability to pay his rent, and the prospect of eviction.

69.    Mr. Durr felt embarrassed and ashamed about his situation, and did not tell his family what had happened, causing him to internalize the distress and placing substantial strain on his mental and physical health.

70.    The prolonged dispute process—which extended over many weeks, involved repeated telephone calls to Defendants, required Mr. Durr to dispute unauthorized transactions one at a time as they processed, and resulted in repeated denials without provisional credit—compounded Mr. Durr's mental and physical distress.

71.    As a further result of Defendants' conduct, Mr. Durr was forced to expend substantial time, effort, and resources attempting to recover the Stolen Funds and to pursue his disputes with Defendants.

## STATUTORY FRAMEWORK

72.    The EFTA, 15 U.S.C. §§ 1693 et seq., and its implementing regulation, Regulation E, 12 C.F.R. Part 1005, govern the rights, liabilities, and responsibilities of participants in electronic fund transfer systems.

**Consumer Liability Limits for Unauthorized Transfers — 15 U.S.C. § 1693g**

73.    Section 1693g of the EFTA strictly limits a consumer's liability for unauthorized electronic fund transfers. Where a consumer notifies the financial institution within two business

Page 11    COMPLAINT

days of learning of the loss or theft of an access device, the consumer's liability shall not exceed $50.00. 15 U.S.C. § 1693g(a); 12 C.F.R. § 1005.6(b)(1).

74.     The EFTA places the burden of proof on the financial institution to demonstrate that a challenged electronic fund transfer was authorized. 15 U.S.C. § 1693g(b). A financial institution cannot satisfy its burden merely by pointing to the fact that a transaction was processed through security features on the consumer's device when that device was itself stolen.

75.     Critically, negligence by the consumer cannot be used as the basis for imposing greater liability than is permissible under Regulation E. 12 C.F.R. § 1005.6(b)(2). Consumer behavior that might constitute negligence under state law does not affect the consumer's liability for unauthorized transfers.

**Error Resolution Requirements — 15 U.S.C. § 1693f**

76.     The EFTA imposes mandatory error resolution procedures on financial institutions. Upon receipt of notice of an error from a consumer, a financial institution must investigate the alleged error, determine whether an error has occurred, and report or mail the results of its investigation to the consumer within ten business days. 15 U.S.C. § 1693f.

77.     If a financial institution is unable to complete its investigation within ten business days, it must provisionally credit the consumer's account for the amount of the alleged error pending completion of the investigation. 15 U.S.C. § 1693f(c).

78.     If a financial institution determines that no error occurred, it must deliver to the consumer a written explanation of its findings and, upon request, provide copies of all documents it relied upon in making its determination. 15 U.S.C. § 1693f(d).

**Treble Damages — 15 U.S.C. § 1693f(e)**

Page 12     COMPLAINT

**Baxter & Baxter, LLP**
8835 SW Canyon Lane, Suite 130
Portland, OR 97225
(503) 297-9031 (Telephone)
(503) 291-9031 (Facsimile)

79.    Where a financial institution (i) fails to provisionally credit a consumer's account within the required time period, and (ii) either fails to make a good faith investigation of the alleged error or fails to have a reasonable basis for believing that the consumer's account was not in error, treble damages are available. 15 U.S.C. § 1693f(e). Treble damages are also available where a financial institution knowingly and willfully concludes that a consumer's account was not in error when such a conclusion could not reasonably have been drawn from the evidence available. Id.

**Civil Liability — 15 U.S.C. § 1693m**

80.    Any financial institution that fails to comply with the EFTA is liable to the consumer for actual damages, statutory damages in an amount between $100 and $1,000 for individual actions, reasonable attorneys' fees, and costs of the action. 15 U.S.C. § 1693m.

**COUNT I**
**Violation of 15 U.S.C. § 1693g — Unlawful Assignment of Liability for Unauthorized Transfers**

**(Against Both Defendants)**

81.    Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

82.    The transfers described herein were "unauthorized electronic fund transfers" within the meaning of the EFTA, 15 U.S.C. § 1693a(12), because they were initiated by Mr. Williams, who obtained access to Mr. Durr's accounts through the theft of Mr. Durr's iPhone, without the actual authority of Mr. Durr, and from which Mr. Durr received no benefit.

83.    Mr. Durr notified both Cash App and Chime of the unauthorized transfers on July 5, 2025—within one business day of discovering the theft. Accordingly, Mr. Durr's liability for

Page 13    COMPLAINT

unauthorized transfers is capped at $50.00 under 15 U.S.C. § 1693g(a) and 12 C.F.R. § 1005.6(b)(1).

84.     The EFTA places the burden on Defendants to demonstrate that the disputed transfers were authorized. 15 U.S.C. § 1693g(b). Defendants cannot meet this burden..

85.     Mr. Durr promptly reported the theft, identified the perpetrator by name, provided a police report naming Felizio Williams as the thief, and had no history of filing false disputes. The pattern and timing of the unauthorized transactions—occurring in rapid succession, in the middle of the night, to multiple unfamiliar payees—is wholly inconsistent with Mr. Durr's normal account activity.

86.     Cash App's stated rationale—that the transactions were "authorized using a Security Lock feature"—is legally insufficient under the EFTA. The security feature was present on a stolen device.

87.     The fact that the perpetrator was able to bypass or use the security features on the stolen phone does not establish that Mr. Durr authorized the transfers.

88.     Cash App's further rationale—that the transactions were made by "someone you authorized to use your credentials"—is refuted by the evidence. A thief who steals a phone while the owner is asleep is not someone authorized by the account holder to initiate transfers.

89.     Negligence by the consumer cannot be used as the basis for imposing greater liability than is permissible under Regulation E. 12 C.F.R. § 1005.6(b)(2). To the extent Defendants contend that Mr. Durr bore any responsibility for the theft of his phone while he was asleep in his own home, such contentions are expressly foreclosed by the EFTA.

90.     As a direct and proximate result of Defendants' violations of 15 U.S.C. § 1693g, Mr. Durr has suffered actual damages in the amount of at least $3,686.87 (representing the $3,736.87 in

Page 14     COMPLAINT

**Baxter & Baxter, LLP**
8835 SW Canyon Lane, Suite 130
Portland, OR 97225
(503) 297-9031 (Telephone)
(503) 291-9031 (Facsimile)

Stolen Funds less the $50.00 statutory maximum consumer liability), as well as consequential damages including the loss of his home, emotional distress, and other damages.

91.    Defendants are therefore liable to Mr. Durr for actual damages, statutory damages, treble damages, attorneys' fees, and costs. 15 U.S.C. §§ 1693m, 1693f(e)..

## COUNT II
### Violation of 15 U.S.C. § 1693f — Failure to Conduct a Reasonable Investigation
### (Against Both Defendants)

92.    Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

93.    Upon receiving notice of the disputed transactions, each Defendant was obligated under 15 U.S.C. § 1693f to conduct a reasonable, good-faith investigation of the alleged errors.

94.    Defendants did not conduct good-faith investigations. Cash App denied Mr. Durr's initial dispute within approximately four days of his report and issued a boilerplate denial citing only that the transaction was "authorized using a Security Lock feature," without addressing the evidence that Mr. Durr's phone was stolen or explaining how it investigated that claim.

95.    Cash App's final denial, issued on July 23, 2025, likewise relied on a legally insufficient and circular rationale—that the transfers were "authorized by you or someone you authorized"—without any engagement with Mr. Durr's police report, his description of the theft, or the evidence identifying Mr. Williams as the perpetrator.

96.    Rather than investigating the merits of Mr. Durr's dispute, Cash App instead closed his account on July 16, 2025, on the stated basis that his "dispute was flagged as potentially fraudulent or false"—thereby treating the victim of the theft as the wrongdoer.

Page 15    COMPLAINT

**Baxter & Baxter, LLP**
8835 SW Canyon Lane, Suite 130
Portland, OR 97225
(503) 297-9031 (Telephone)
(503) 291-9031 (Facsimile)

97.     Chime filed four separate dispute claim numbers (17393851, 17401842, 17428330, and 17487536) over the course of weeks, yet ultimately denied all of them without crediting Mr. Durr's account, without conducting a genuine investigation of the evidence he provided, and without providing any meaningful explanation of the bases for its determinations.

98.     Chime also compounded its own failure to investigate in good faith by issuing a new virtual card number to Mr. Durr's account despite his express instructions not to do so, thereby enabling further unauthorized transfers.

99.     Chime's disregard of Mr. Durr's express instructions and the foreseeable consequences of its own action are inconsistent with any good-faith effort to investigate or to mitigate ongoing unauthorized activity.

100.    Both Defendants also refused, when called, to accept disputes for unauthorized transactions that were in "pending" status, requiring Mr. Durr to wait until each transaction processed before submitting a dispute.

101.    That practice is inconsistent with Defendants' obligations under 15 U.S.C. § 1693f and 12 C.F.R. § 1005.11, which require financial institutions to investigate oral or written notice of error from the consumer regardless of whether the underlying transaction has cleared.

102.    Defendants did not have a reasonable basis for concluding that Mr. Durr's accounts were not in error, given the totality of the evidence: the police report identifying the perpetrator by name; the Lyft ride receipt showing a ride charged to Mr. Durr's account at 4:16 AM from Mr. Durr's residence to Mr. Williams's residence; the volume, overnight timing, and rapid-fire sequencing of the unauthorized transactions; and Mr. Durr's immediate reporting of the theft.

103.    Defendants' conduct—including the failure to provisionally credit Mr. Durr's account, the failure to genuinely investigate the disputes, the reliance on boilerplate and legally

Page 16     COMPLAINT

**Baxter & Baxter, LLP**
8835 SW Canyon Lane, Suite 130
Portland, OR 97225
(503) 297-9031 (Telephone)
(503) 291-9031 (Facsimile)

insufficient rationales, the refusal to accept disputes for pending transactions, and Chime's issuance of a new virtual card in disregard of express customer instructions—constitutes a failure to investigate in good faith and a failure to establish a reasonable basis for Defendants' determinations under 15 U.S.C. § 1693f.

104.    Defendants' conclusions that Mr. Durr's accounts were not in error were conclusions that could not reasonably have been drawn from the evidence available to them.

105.    Defendants are therefore liable to Mr. Durr for actual damages, statutory damages, treble damages, attorneys' fees, and costs. 15 U.S.C. §§ 1693m, 1693f(e).

## COUNT III
### Violation of 15 U.S.C. § 1693f(c) — Failure to Provide Provisional Credit

### (Against Both Defendants)

106.    Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

107.    When a financial institution cannot complete its error investigation within ten business days, it must provisionally credit the consumer's account for the amount of the alleged error so that the consumer has use of the money during the investigation. 15 U.S.C. § 1693f(c).

108.    Mr. Durr reported the unauthorized transactions to both Cash App and Chime on July 5, 2025. As to some or all of the disputes each Defendant handled, the Defendant's investigation took more than ten business days to resolve, yet neither Cash App nor Chime provisionally credited Mr. Durr's account at any time.

109.    Defendants' failure to provide provisional credit while the investigations were pending caused Mr. Durr to be without access to funds he needed for rent, contributing to his inability to pay his rent and the subsequent loss of his home.

Page 17    COMPLAINT

**Baxter & Baxter, LLP**
8835 SW Canyon Lane, Suite 130
Portland, OR 97225
(503) 297-9031 (Telephone)
(503) 291-9031 (Facsimile)

110. Defendants are therefore liable to Mr. Durr for actual damages, statutory damages, treble damages, attorneys' fees, and costs. 15 U.S.C. §§ 1693m, 1693f(e).

**COUNT IV**
**Violation of 15 U.S.C. § 1693f(d) — Failure to Provide Adequate Written Explanation**
**(Against Both Defendants)**

111. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

112. Where a financial institution determines that no error occurred, it must deliver to the consumer a written explanation of its findings. 15 U.S.C. § 1693f(d). That explanation must go beyond a bare conclusion; it must actually explain or give the reasons for or cause of the determination.

113. Cash App's denial communications were boilerplate and legally inadequate.

114. Its July 9, 2025 denial stated only that "no error occurred because the payment was authorized using a Security Lock feature," without explaining how that conclusion addressed the undisputed theft of the device. Its July 16, 2025 account closure email stated that the denial was based on "account history, transaction disputes, or other possible violations of the Cash Terms of Service," and that Cash App "cannot provide further details." Its July 23, 2025 final denial stated only that the transactions were "authorized by you or someone you authorized to use your credentials."

115. None of Cash App's denials addressed Mr. Durr's police report, his identification of the perpetrator, the Lyft ride evidence, or any other evidence he submitted. Cash App affirmatively refused to provide further details and stated that its decision could not be changed.

Page 18    COMPLAINT

**Baxter & Baxter, LLP**
8835 SW Canyon Lane, Suite 130
Portland, OR 97225
(503) 297-9031 (Telephone)
(503) 291-9031 (Facsimile)

116.    Chime similarly denied each of Mr. Durr's disputes without providing an adequate written explanation of the bases for its determinations.

117.    Neither Defendant effectively notified Mr. Durr of his right to request copies of all documents upon which it relied in reaching its determination, as required under 15 U.S.C. § 1693f(d). Cash App's July 23, 2025 email provided a link to request such documents, but that link required use of the Cash App mobile application from which Mr. Durr had already been locked out when Cash App closed his account on July 16, 2025.

118.    Defendants are therefore liable to Mr. Durr for actual damages, statutory damages, attorneys' fees, and costs. 15 U.S.C. § 1693m.

## COUNT IV
### Violation of 15 U.S.C. § 1693f(d) — Failure to Provide Adequate Written Explanation
### (Against Both Defendants)

119.    Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

120.    Defendants engaged in unfair or deceptive acts or practices occurring in trade or commerce, in violation of RCW 19.86.090.

121.    Defendants' unfair or deceptive acts and practices impact the public interest because (1) Defendants, by their unfair or deceptive acts or practices in the conduct of trade or commerce, induced Mr. Durr to act or refrain from acting; (2) Mr. Durr suffered damage brought about by such action or failure to act; and (3) Defendants' deceptive acts or practices have the potential for repetition.

122.    Defendants' unfair or deceptive acts and practices caused injury to Mr. Durr in his business or property, including but not limited to significant actual damages including both

Page 19    COMPLAINT

Baxter & Baxter, LLP
8835 SW Canyon Lane, Suite 130
Portland, OR 97225
(503) 297-9031 (Telephone)
(503) 291-9031 (Facsimile)

pecuniary and non-pecuniary harm, and general damages in an amount to be determined by the jury. Mr. Durr's damages are continuing and subject to amendment at trial.

123.    Mr. Durr is entitled to recover his actual damages, treble damages, and reasonable attorney fees pursuant to RCW 19.86.090.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in his favor and against Defendants Block, Inc. d/b/a Cash App and Chime Financial, Inc., jointly and severally, and award the following relief:

a)  Actual damages;

b)  Statutory damages;

c)  Treble damages;

d)  Attorney's Fees and Costs of this Action;

e)  Pre-judgment and post-judgment interest as allowed by law; and

f)  Such other and further relief, including equitable and declaratory relief, as this Court deems just and proper.

Page 20    COMPLAINT

**Baxter & Baxter, LLP**
8835 SW Canyon Lane, Suite 130
Portland, OR 97225
(503) 297-9031 (Telephone)
(503) 291-9031 (Facsimile)

## JURY DEMAND

Plaintiff demands a trial by jury on all claims so triable.

DATED this 15th day of May, 2026.

Respectfully submitted,

/s/ Justin M. Baxter
Justin M. Baxter, WSBA #39182
BAXTER & BAXTER
8835 SW Canyon Lane Suite 130
Portland, OR 97225
Email: justin@baxterlaw.com

Daniel A. Schlanger
*Pro Hac Vice Application Forthcoming*
Schlanger Law Group, LLP
150 Allens Creek Road, Suite 240
Rochester, NY 14618
T: (212) 500-6114
F: (646) 612-7996
E: dschlanger@consumerprotection.net

*Attorneys for Plaintiff*

Page 21    COMPLAINT